[No. A097686. First Dist., Div. Four. May 25, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DERICK E. LOVINGS, Defendant and Appellant.

**COUNSEL**

J. Courtney Shevelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Jeffrey M. Laurence and John R. Vance, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAY, P. J.**—Derick E. Lovings (appellant) was charged with the murder of his sister, Regina Lovings (Pen. Code, § 187),[1] in an information that alleged use of a dangerous weapon (§ 12022, subd. (b)), intentional infliction of great bodily injury (§ 1203.075), and a strike conviction of attempted voluntary

---

[1] All further statutory references are to the Penal Code.

manslaughter (§§ 667, subds. (a) and (e)(1), 1170.12, subd. (c)(1)). Appellant pled no contest to first degree murder, admitted the enhancements, and was sentenced to 52 years to life in prison. He contends that the court erred in denying two *Marsden* (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156]) motions he made before entering the no contest plea. We conclude that any error in connection with the *Marsden* motions was waived by the plea, and therefore affirm the judgment.

## I.

Appellant's first appointed attorney, referred to herein as Jane Doe in view of the record of unproven sexual allegations by appellant against her, was succeeded as appointed counsel by Howard Harpham, who represented appellant at the preliminary hearing in June 2000. According to evidence at the hearing, Regina Lovings disappeared in November 1998. In December 1998, appellant told police where they could find her body; it was wrapped in plastic under· her house, exactly where he said it would be. Appellant confessed that he had punched Regina, hit her with a skillet, and strangled her; an autopsy showed that the death was caused by multiple blunt injuries and strangulation.

In September 2000, the court granted appellant's *Faretta* (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) motion to represent himself. In November 2000, the court granted his request for counsel, and appointed Theodore Johnson to represent him. In February 2001, a section 1538.5 motion was set for March 16, 2001, and trial was set for April 2, 2001. Appellant appeared in court for the March 16 hearing but Johnson did not. The court stated that it had received a call from Johnson the day before advising that he would not be proceeding with the motion as scheduled, and no motion papers were filed. On March 28, 2001, Johnson moved to continue the April 2 trial date. The motion stated: "Counsel is currently in trial and has been in trial since 2/13/01. Thus, Counsel has not had adequate time to prepare for trial. Also there has been a break down in the attorney-client relationship between attorney and defendant. On 3/14/01 attorney received a letter from Defendant asking attorney to step down from his case."

Appellant filed one of the *Marsden* motions at issue in this appeal on April 2, 2001. In it, he put check marks in boxes next to the following statements: "Counsel has failed and/or refused to confer with declarant concerning the preparation of the defense"; "Counsel has failed and/or refused to communicate with declarant"; and "Counsel has failed and/or refused to declare

prejudice and/or conflict against declarent and due to said failure has taken on the role of a surrogate prosecutor against declarent's interest." In an attached statement, appellant indicated among other things that Johnson had previously done work for him with his former counsel, Jane Doe, on civil matters related to the criminal case, and appellant alleged that he and Johnson had a conflict of interest because of the allegations he had made against Doe. Appellant also attached documentation showing that he had filed a complaint against Johnson with the California State Bar.

At the hearing on April 2, 2001, after listening to appellant's grievances, and responses from Johnson that the court treated as a motion to withdraw as counsel, the court denied the *Marsden* and withdrawal motions,[2] and continued the trial date to April 30, 2001. The court noted that "this is not the first time that [appellant] has made a motion to have his counsel relieved . . . there [were] a considerable number of letters to the judge concerning the representation of [Jane Doe], then there were considerable complaints about the representation of Mr. Harpham. At one point in September you made a motion to have Mr. Harpham relieved as counsel of record. [¶] . . . That was granted. You represented yourself. You were ready to go to trial and then you asked to have an attorney appointed and Mr. Johnson was appointed to represent you. [¶] Now that was a full four or five months ago. This case is now ready for trial. It is going to trial. I don't play games and this is playing games."

Johnson moved again to withdraw as counsel on April 10, 2001; the motion was heard and denied on that date. Appellant filed the other *Marsden* motion at issue in this appeal on April 23, 2001. He checked the same boxes he had checked in the prior motion, and additional boxes stating: "Counsel did fail and/or refused to subpoena witnesses favorable to the defense and deprived declarent of the testimony critical to the defense"; "Counsel has failed and/or refused to perform and/or to have performed investigations(s) critical and necessary to the defense"; "Counsel has failed and/or refused to secure and present expert witness(es) critical to the defense"; "Counsel has failed and/or refused to prepare and file motion(s) critical to the defense."

On April 30, 2001, Johnson again moved to withdraw and the motion was denied. Later that day, appellant asked the court whether it had "got[ten] anything through the mail," and the court said it "saw no new grounds on which the *Marsden* should be reraised." On May 2, the court reiterated that it had received appellant's renewed *Marsden* motion and that it "did not see new factors there"; the motion was thus denied without a hearing.

---

[2] We denied appellant's writ petition to overturn the *Marsden* ruling.

On May 7, 2001, the court denied appellant's motion to suppress his confession. Shortly after the prosecutor began his opening statement to the jury on that date, appellant interjected, "I'd like to plead guilty right now. I don't want to hear this. I do not want to hear this at all. I wish to plead guilty right now." After the jury was excused, appellant pled no contest to murder in the first degree, and admitted the allegations of the information.

Johnson refused to concur in the plea. Johnson indicated that he had "spent a lot of time on [appellant's] case," and stated: "[Appellant] may find this hard to believe, but I care about what happens to him. I have encouraged him to at least read the opening argument [Johnson had prepared] . . . once I got involved in this case and really started reviewing the situation I know at the very least that there are mitigating circumstances to this case at the very least and maybe even justification at the top and a very good chance for manslaughter somewhere in the middle. This plea, I will not take part in it and I have advised him strongly not to do it." Appellant confirmed that he had discussed the case and all possible defenses with Johnson. Appellant said that Johnson had "been very good" and had advised him "that I shouldn't do this." The prosecutor asked appellant, "Also, sir, you are not playing games with anyone, you're not going to come back tomorrow or in the future and say you changed your mind, that you have been railroaded. You're in essence today waiving all your appellate rights concerning this voluntary plea, correct?" Appellant answered, "Yes."

About a week later, on May 15, 2001, appellant wrote a letter to the court asking to withdraw his plea on the grounds that "I wasn't in my right frame of mind nor did I have legal representation at that time. . . . [¶] . . . [¶] P.S. My apologies to the court for any inconvenience." When appellant's motion to withdraw the plea was heard on June 5, 2001, the court granted Johnson's request to initiate competency proceedings for appellant under section 1368, but stated "for the record that having observed Mr. Lovings throughout . . . all the pretrial motions, having read all the paperwork that Mr. Lovings has submitted, having reviewed all the motions that he's submitted to me in writing, having reviewed all the matters that were presented to this court before the matter was assigned to me for trial and having reviewed also all the paperwork that was submitted to the Court of Appeal, I personally do not have a doubt as to Mr. Lovings's competence to stand trial and his knowledge of what was happening, his awareness of the proceedings, his knowledge of the court proceedings and his ability to cooperate with counsel." Criminal proceedings were suspended for appointment of experts to determine whether appellant was competent "to understand the proceedings before him . . . at the time of his entry of the plea."

At a hearing on July 19, 2001, a date was set for trial of the competency issue. At a hearing the next day, the court said it had been informed that appellant had told deputies after the previous hearing that he had changed his mind and did not want to have a competency trial. The court asked appellant if that was, in fact, his decision. Appellant replied, "No," and indicated that he wanted to proceed with the trial. Another *Marsden* motion by appellant was denied on December 3, 2001. On December 7, 2001, appellant was found by a jury to be competent.

On December 10, 2001, the court denied appellant's motion to withdraw his plea. The court told appellant it found "that at the time that you made your entry of the plea that you were informed fully of your rights. I find also that you were competent, you were coherent, you were adamant, you were fully knowing of the consequences of your plea and the ramifications of your plea, and I found absolutely no sign in you of any wavers of your resolve to enter this plea or as to any confusion or inability to understand precisely the proceedings that were before you." The court sentenced appellant on January 16, 2002, to the maximum term permitted by the plea.

On February 26, 2002, appellant filed an amended notice of appeal and application for certificate of probable cause, which identified "ineffective counsel—inadequate representation" among the grounds for review. In an attached "certificate statement," appellant complained among other things about the court's treatment of his request to fire Johnson as his attorney. On the bottom of the first page of the notice and application the court wrote, "Grant cert."

On September 22, 2002, after counsel had been appointed for appellant on appeal, appellant wrote a letter to this court saying, "From this point forward I will be handling my own appeal." On October 28, 2002, we filed an order allowing appellant to proceed in pro. per. On November 1, 2002, we received a letter from appellant saying, "I do not wish to appeal." On November 4, 2002, we received a letter from appellant withdrawing his requests to proceed in pro. per. and to dismiss the appeal; new appellate counsel for him was appointed on November 13, 2002.

## II.

In *People v. Lobaugh* (1987) 188 Cal.App.3d 780 [233 Cal.Rptr. 683], the defendant made an unsuccessful *Marsden* motion, pled guilty, and sought

to raise *Marsden* error on appeal.[3] The court held that the alleged *Marsden* error was waived by the guilty plea because the defendant did not contend that the plea "was not intelligently and voluntarily made," or "that the advice he received from counsel was inappropriate concerning his plea." (*Lobaugh,* at p. 786.) Here, as in *Lobaugh,* appellant does not contend that his no contest plea was unintelligent or involuntary. No such claim could succeed in view of the court's finding to the contrary, and the jury's finding that he was competent when he entered the plea. Likewise, appellant does not and could not contend that he received inappropriate legal advice concerning his plea, because the plea was entered over counsel's objection. Therefore, "[t]he claimed *Marsden* error[s] do[] not go to the legality of the proceedings resulting in the plea," and appellant is "foreclosed from raising [them] on appeal." (*Ibid.*)

■ Appellant's attempts to avoid the application of *Lobaugh* are unavailing. He submits that *Lobaugh* is distinguishable because, unlike the defendant there, he obtained a certificate of probable cause that permits him to raise the *Marsden* issues. He reasons that because failure to obtain a certificate of probable cause prevented any appeal on the *Marsden* issue in *Lobaugh,* the court's conclusion that the issue was waived by the defendant's plea was merely dicta. However, the lack of a certificate of probable cause played no part in *Lobaugh's* resolution of the *Marsden* issue. Waiver by the plea was the "rule" the court used to decide that issue (*People v. Lobaugh, supra,* 188 Cal.App.3d at p. 786) and was the holding of the case on that issue. Further, a certificate of probable cause only perfects an appeal; it does not expand or limit the cognizable issues. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178 [43 Cal.Rptr.2d 827, 899 P.2d 896].) If, as *Lobaugh* holds, the *Marsden* issues appellant seeks to raise were waived by his no contest plea, then it is irrelevant whether he obtained a certificate of probable cause as to those issues.

Appellant argues that *Lobaugh* is distinguishable because there was no suggestion that the guilty plea there "was entered against counsel's advice and without the defendant obtaining one iota of benefit from the plea." As previously noted, counsel's objection to the plea in this case is a fact that hurts rather than helps appellant. As for benefit from the plea, appellant was at least spared the ordeal of a trial that showed that he committed "the shocking murder of Regina Lovings," as the prosecutor was putting it when appellant interrupted him to say that he did "not want to hear this" and

---

[3] It is apparent from *Lobaugh's* discussion of another alleged error—denial of a motion for a continuance—that the *Marsden* motion preceded the entry of the guilty plea. (See *People v. Lobaugh, supra,* 188 Cal.App.3d at p. 786.)

wanted to plead guilty. The merits of the bargain are irrelevant in any event; the issues as to the plea are whether it was involuntary, unintelligent, or the product of inappropriate advice from counsel (*People v. Lobaugh, supra,* 188 Cal.App.3d at p. 786), and none of those problems are present here.

█ To the extent that appellant may be taken to argue that he felt coerced to enter his no contest plea because of the denial of his *Marsden* motions (see *People v. Robinson* (1997) 56 Cal.App.4th 363, 376, fn. 1 [65 Cal.Rptr.2d 406] (dis. opn. of Callahan, J.)), the argument fails on this record. A guilty plea represents a " ' "break in the chain of events" ' " in a criminal case that may preclude claims as to pre-plea rights (*People v. Turner* (1985) 171 Cal.App.3d 116, 126 [214 Cal.Rptr. 572]), and appellant's no contest plea was a very pronounced "break in the chain of events" involving the attorney-client relationship in this case. The animosity and poor communications previously suggested or alleged were not in evidence at the plea hearing, where Johnson made it clear what he thought of the plea, and appellant confirmed that Johnson had "been very good" and tried to dissuade him. Johnson appears to have been prepared for trial when it began, and appellant's previous concerns with Johnson's trial preparation and attention to the case were in any event obviated by the no contest plea eliminating guilt as an issue. Under the circumstances presented here, the *Lobaugh* test for waiver— whether the plea itself was involuntary or the product of poor legal advice—is especially persuasive.

Appellant argues that the record does not negate a causal connection between his plea and the alleged breakdown of his relationship with Johnson because he wrote the court a letter a week after the plea stating that he did not "have legal representation" when the plea was entered. This, he submits, shows that he "viewed representation by Johnson as being no representation at all," and that their relationship was "so poor by the time the trial started that he opted to reject Johnson's advice and just plead nolo contendere to everything." It was predictable given appellant's behavior throughout the case that he would have second thoughts about the plea, but contrary to his post-plea ipse dixit, he was in fact represented when he entered the plea, and the record establishes that advice of counsel had no bearing on his decision to do so. Accordingly, the prior *Marsden* rulings cannot be deemed to have had any abiding impact that tainted the plea, and the plea waived any error in connection with those rulings.[4]

---

[4] In view of this conclusion, we need not determine the effect of appellant's express waiver of appellate rights at the plea hearing.

## III.

The judgment is affirmed.

Reardon, J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 25, 2004.