Filed 8/28/13  P v. McCabe CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C071417 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR83093) |
| v. | |
| RYAN SCOTT MCCABE, | |
| Defendant and Appellant. | |

Defendant Ryan Scott McCabe entered into a negotiated plea agreement whereby he pleaded guilty to felony evading a peace officer, admitted a prior strike, and waived all custody credits up to the day of entry of the plea, in exchange for a maximum state prison term of six years and dismissal of all remaining charges and allegations.  The trial court sentenced him to state prison for six years and awarded him 80 days of presentence custody credit.

1

Defendant appeals, claiming the trial court failed to conduct a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), and miscalculated his presentence custody credits. We affirm the judgment.

FACTS AND PROCEEDINGS

The following particulars of defendant's crimes are taken from the Tehama County Sheriff's report, which formed the factual basis of his plea:

A Tehama County Sheriff was driving on Kaer Avenue when the car behind him driven by defendant flashed its high beams five times and passed him. Noticing defendant's car had no tail lights, the officer attempted to make a traffic stop. Defendant stopped briefly in front of a residence, then sped off, leading the officer on a high speed chase which at times reached speeds of 100 miles per hour. During the chase, defendant drifted into oncoming traffic, narrowly missed a big rig truck parked on the side of the road, failed to stop at a stop sign, and ran a red light. He eventually jumped out the driver's side door and continued to flee on foot, leaving the car to roll unattended until it struck a telephone pole wire.

The officer continued the pursuit on foot, following defendant into the bushes and, after catching up with him, ordering him from his hiding spot. A second sheriff's deputy arrived and, together, the two officers were eventually able to pin defendant to the ground and place him in handcuffs. The officers were informed the vehicle had just been reported stolen, and the ignition had been "punched."

Defendant was charged by information with evading a peace officer (Veh. Code, § 2800.2, subd. (a)--count I), unlawful driving or taking a vehicle with a prior (Pen. Code, § 666.5; further unspecified references are to this code--count II), and receiving stolen property (§ 496d, subd. (a)--count III), all felonies. The information alleged that, as to all counts, defendant had a prior strike (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-

2

(i)), two prior prison terms (§ 667.5, subd. (b)), and he committed the offense while out on bail (§ 12022.1).

As part of a negotiated plea agreement, defendant pleaded guilty to count I, admitted the prior strike allegation, and waived all presentence custody credits up to the date of entry of his plea, in exchange for dismissal of all remaining charges and allegations and a maximum six-year prison sentence in case No. NCR83093. The parties further agreed the People would reduce the charge in pending case No. NCR80364 to a misdemeanor and dismiss the special allegation in that case.

Thereafter, defendant filed two motions, one to strike the strike prior (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*); § 1385), and the other to withdraw his plea (§ 1018). After hearing oral argument, the court denied both motions.

The trial court sentenced defendant to six years in state prison in case No. NCR83093, a concurrent one-year county jail term in case No. NCR80364, and imposed terms and conditions, including fees and fines, as recommended in the probation report. With defendant's limited waiver of presentence custody credits in mind, the court calculated credits and arrived at a total of 80 days in case No. NCR83093, and two days in case No. NCR80364.

Defendant filed a timely notice of appeal. The trial court denied his request for a certificate of probable cause. Defendant filed a timely amended notice of appeal.

DISCUSSION

I

*Substitution of Trial Counsel*

Defendant contends the trial court failed to conduct a *Marsden* hearing after he "clearly indicated" he wanted substitute counsel when he told the court he wanted to "fire" his attorney, his attorney "doesn't even talk with" him, his attorney was "scaring" him, his attorney "does not like" him, and he and his attorney had "millions of

3

breakdowns in the communication." Defendant urges that those statements, coupled with the fact that he had to be handcuffed when in the presence of his attorney, demonstrated the probability that he and his attorney "had become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."

We review the trial court's decision denying defendant's motion to substitute counsel under the "deferential abuse of discretion standard." (*People v. Jones* (2003) 29 Cal.4th 1229, 1245 (*Jones*); see also *People v. Earp* (1999) 20 Cal.4th 826, 876.) As we shall explain, there was no error.

Here, as aptly noted by the People, context is everything. While defendant focuses on his post-plea comments (properly conceding pre-plea *Marsden* issues are waived on appeal after the entry of a guilty plea (*People v. Lobaugh* (1987) 188 Cal.App.3d 780, 786; *People v. Lovings* (2004) 118 Cal.App.4th 1305, 1311)), his discussions with the court prior to entry of his plea are not only revealing, but relevant and necessary to place his claim into perspective for proper review.

A.    Pre-Plea Discussions

On March 22, 2012, the following discussions (some of which were held in chambers) occurred between counsel, defendant, and Judge Richard Scheuler, the judge presiding over the matter, regarding entry of defendant's plea:

"THE COURT: [¶] . . . [¶] Speaking to Mr. McCabe, I understand that there are two charges against you in this trial. There has been certain negotiations, which you have declined, which is your right, but I understand that you are going to admit the two -- excuse me, the special allegations, the enhancements, that go along with the charges, that is the prior convictions; is that the case, sir?

"THE DEFENDANT: Does that mean the jury doesn't get to hear it?

"THE COURT: I will be happy to answer that for you, but you really need to talk to your attorney about legal matters. [¶] If you admit a prior allegation, allegation of a prior,

4

then it does not go to the jury, which is usually seen as an advantage from the defense. But, nonetheless, it is your choice as to whether you do it or not.

"THE DEFENDANT:  I am going to admit it.

"THE COURT:  I don't want to mislead you, you should really talk to your counsel about this."

A detailed exchange continued between the court and defendant regarding the special allegations:

"THE COURT:  As to each of those charges, there are these three separate special allegations that I am going to read to you.  So far, do you understand what we're doing, sir?

"THE DEFENDANT"  Not really.

"THE COURT:  Well, let's back up to anything that you don't understand.  [¶]  First of all, let me ask you:  As you sit here today, is there anything that would prevent you from understand [sic] me or making an intelligent comment to me?  For example, are you under the influence of drugs or anything like that?

"THE DEFENDANT:  I am on Seroquel and a whole bunch of pills for antipsychotics.

"THE COURT:  Those are pills which may be helping or not but they are designed to help you.  Are they doing any good for you?

"THE DEFENDANT:  Not really.  I can't decipher what is true and what is not.

"THE COURT:  All right.  Well, that is an important point, because before I can accept an admission, I have to know that you're understanding what you admit.  If you do not understand what you're admitting, then I cannot accept your admission and the matter will have to go to the jury; do you understand that?

"THE DEFENDANT:  Uh-huh.

"THE COURT:  So let's go through this.  Pardon me.

"THE DEFENDANT:  I don't understand nothing.

5

"THE COURT: All right. I understand the words, but I am going to start over and I want you to tell me what you don't understand. Okay? [¶] Do you understand that I am going to go through these rights with you again? [¶] Would you please answer out loud?

"THE DEFENDANT: Yes."

The court explained to defendant the difference between charges and special allegations, and the following discussion ensued:

"THE COURT: The question of whether you want it to go to the jury or not is a question between you and your attorney. Some people say they want it to go to the jury; some people say I would rather the jury not hear about that. But, I don't want to get involved in advising you; I just want to make sure you understand what you're doing and get on the record that you understand it.

"THE DEFENDANT: Well, I basically kind of understand now, because you explained it to me; my lawyer, I have tried to fire him, I don't have no communication with the dude. He makes me so mad, I have to put on handcuffs. So, there has been a breakdown.

"[DEFENSE COUNSEL]: For the record, I have explained everything the Court has explained to my client. I thought he understood that. He indicated to me earlier that he wished to admit the special allegations with the understanding that those would not go to the jury and the jury would not hear that evidence. Thank you.

"THE COURT: Speaking to you, Mr. McCabe. I understand what you said, but right now it is important that you put aside any thoughts about anything else[:] your attorney, your family, the jury. You know, just kind of concentrate[] on what I am saying and then we can either decide that you're going to admit these or not."

After a detailed explanation by the court regarding the consequences of admitting or denying the special allegations, defendant admitted the enhancements. The following colloquy ensued:

"THE COURT: All right. [¶] Thank you, sir. We will go out and start your trial. (Pause)

"THE BAILIFF: Do you prefer him cuffed or not cuffed?

"[DEFENSE COUNSEL]: I prefer him cuffed.

"[THE PROSECUTION]: The question is not of competence of counsel --

"THE COURT: Defendant --

"THE DEFENDANT: I asked if that is lack of counsel? There is a break between me and him. If he doesn't want me around him and wants me to be cuffed, how am I supposed to let this go [*sic*] represent me like that?

"THE COURT: I don't think he said he doesn't want you to be around him.

"THE DEFENDANT: He prefers --

"THE COURT: The implication is what you might have said earlier today, you said you had to be cuffed in order to not do something.

"THE DEFENDANT: No, I need to be cuffed at that moment because I think he is a shit ball, you know what I mean.

"THE COURT: All right. [¶] Counsel for the People?

"[THE PROSECUTION]: I submit it to the Court.

"THE COURT: That is a hard one. Counsel, do you want to come back in chambers for a minute? We'll go off the record and take a look at some books.

"THE DEFENDANT: I already tried to fire him.

"THE COURT: We will be right back, I am just going to look at some law books."

The court took a brief recess, then reconvened and confirmed defendant's acceptance of the negotiated plea agreement as stated in the waiver form signed by defendant. During those discussions, the court asked defendant, "I know you have talked with your attorney before and talked to your attorney today, I know that you have had perceived difficulties but have you had an adequate opportunity to talk with your attorney right now?" Defendant replied, "Yes, sir." When asked if he required any more time to speak with his attorney before taking the plea, defendant answered, "No, sir." At

7

defendant's request, the court agreed to retain the matter for sentencing, and defendant waived time accordingly.

B.     Post-Plea Discussions

On May 14, 2012, Judge Scheuler presided over the hearing on defendant's *Romero* motion and motion to withdraw the plea, and imposition of sentence. The hearing commenced as follows:

"THE COURT: The files are action number 83093 and action 80364. Mr. McCabe is present.

"THE DEFENDANT: Excuse me, Your Honor. I'd like to use my one only time right [sic] to fire you today.

"[DEFENSE COUNSEL]: Can I have just a second, Your Honor?

"THE DEFENDANT: I'd like to fire him too. He doesn't even talk to me. We've had a failure -- my lawyer is scaring me. You set me up to go all the way through this. I couldn't even see when I signed the deal. I was on Seroquel and you set me up all the way through this thing to -- when, you know, I didn't want to take the crime and I didn't know what was going on and now today this man does not like me, but he represents me still with millions of breakdowns in the communication and at the end of the day he still gets to represent me and I get to go up state for fucking something I didn't even do.

"THE COURT: Sir, there are a number of cases before me. I may be wrong, but who was your attorney at the time you entered the plea?

"THE DEFENDANT: What do you mean? Explain that.

"THE COURT: Never mind, I'll find out for myself.

"[DEFENSE COUNSEL]: I represented him at the time of the plea, Your Honor.

"THE COURT: Okay. I have just announced the cases. One of them is a misdemeanor. One of them is a felony. One of them -- the felony -- has also a motion to withdraw a plea and a *Romero* motion. Absent the granting of those, there is a sentencing in the felony matter and the misdemeanor matter. This matter -- these matters -- have been

8

continued several times for reasons that are reflected in the file. The Court will not accept a [section] 170.6 challenge at this time. [¶] Counsel, are you ready to proceed?

"[DEFENSE COUNSEL]: I am, Your Honor.

"THE COURT: Counsel for the People?

"[THE PROSECUTION]: Yes."

"A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. [Citations.]" (*Jones, supra,* 29 Cal.4th at pp. 1244-1245; see also *People v. Dickey* (2005) 35 Cal.4th 884, 917.) "[S]ubstitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation] . . . ." (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

A trial court need not conduct a *Marsden* hearing in the absence of a request for new counsel or articulation of grounds compelling such relief from deficient representation. "Although no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.' (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.)" (*People v. Mendoza* (2000) 24 Cal.4th 130, 157.)

Here, the trial court's response to defendant's statements was reasonable. During the pre-plea discussions, defendant expressed dissatisfaction with his attorney, telling the court he "tried to fire" his attorney, he had "no communication" with his attorney, his attorney made him so mad he "ha[d] to put on handcuffs," and there "has been a breakdown." Defendant's attorney, Ronald McIver, immediately assured the court he had already explained "everything the Court has explained" to defendant and was under the impression defendant understood what was going on. Attorney McIver added that defendant "indicated to me earlier that he wished to admit the special allegations with the

9

understanding that those would not go to the jury and the jury would not hear that evidence."

Defendant did not object in any manner or voice any disagreement with counsel's explanation to the court, nor did he request the appointment of substitute counsel. Indeed, following a detailed explanation by the court regarding the consequences of admitting or denying the special allegations, defendant admitted the special allegations, and Attorney McIver joined in the admissions, all without incident.

The court also responded reasonably when, prior to entry of the plea, defense counsel told the bailiff he preferred that defendant be handcuffed, causing defendant to complain, "There is a break between me and [defense counsel]. If [defense counsel] doesn't want me around him and wants me to be cuffed, how am I supposed to let this go represent me [sic] like that?" The court explained that Attorney McIver's request was likely the result of defendant's earlier statement that he "had to be cuffed in order to not do something." Defendant explained that he "need[ed] to be cuffed at that moment because I think [defense counsel] is a shit ball," and reminded the court, "I already tried to fire him."

Again, defendant did not request the appointment of substitute counsel. His complaint dealt specifically with the issue of being handcuffed, a point the court directly addressed. Then, without further complaint, defendant entered his guilty plea, assisted by defense counsel who joined in the plea. Thereafter, defendant enlisted his attorney to file the *Romero* motion and the motion to withdraw his plea.

At the hearing of the two motions, defendant made a request to "fire" Judge Scheuler and then said of his attorney, "I'd like to fire him too. He doesn't even talk to me. We've had a failure -- my lawyer is scaring me." Defendant went on to complain about his previously-entered plea, arguing the court "set me up to go all the way through this," and adding, "I didn't want to take the crime and I didn't know what was going on and now today this man does not like me, but he represents me still with millions of

10

breakdowns in the communication and at the end of the day he still gets to represent me and I get to go up state for fucking something I didn't even do."

Defendant claims these post-plea statements "clearly indicated" his desire for substitute counsel, thus necessitating a *Marsden* hearing. We disagree. Defendant never requested substitute counsel, either prior to or after entry of his plea. He said he wanted to fire his current counsel, but made no indication that he wanted new counsel appointed to represent him for purposes of sentencing or to move for a new trial. In fact, at the time of the statements in question, he had already enlisted counsel to file the pending motions to withdraw his plea and to strike the strike prior. Thereafter, counsel acted on his behalf for purposes of arguing the motions and sentencing.

In any event, any duty the court had to permit defendant to state his reasons for dissatisfaction with Attorney McIver was appropriately discharged, and the court's response to defendant's complaints was reasonable. Defendant's post-plea claim of an absence of communication with counsel was belied not only by Attorney McIver's pre-plea statements to the contrary, but also by defendant's own response to the court that he had had an adequate opportunity to talk with Attorney McIver and did not require any more time to communicate with counsel before entering his plea. Thereafter, Attorney McIver assisted defendant in entering his plea, filed and argued the two motions on defendant's behalf, and argued on his behalf for a lesser sentence. Defendant's claim of being afraid of his attorney similarly lacks credibility in light of his prior statement that counsel made him so angry he (defendant) needed to be handcuffed. Viewing defendant's post-plea statements in light of his pre-plea discussions with the court, it is clear that defendant, unhappy with his plea arrangement, was raising complaints the court had already heard and adequately addressed.

We find no abuse of discretion. Defendant has not demonstrated an irreconcilable conflict with counsel that impaired his right to assistance of counsel. (*People v. Smith, supra,* 6 Cal.4th at p. 696.)]

11

## II

### *Presentence Custody Credits*

Defendant committed his offense on July 20, 2011. As part of his negotiated plea agreement, he waived all presentence custody credit prior to March 22, 2012, the date of entry of his plea. The trial court awarded him 54 actual time credits "divided by 4 rounded down and multiplied by 2 is 26 days, so 54 and 26 . . . is 80 days."

Defendant contends the trial court applied the wrong formula, depriving him of additional custody credit to which he is entitled.

Under the law in effect at the time defendant committed the crime, a defendant with a prior serious conviction was entitled to two days of conduct credit for every four days of presentence custody. (Former § 4019, as amended by Stats. 2009, 3d Ex. Sess., ch. 28, § 50.)

The Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 482, Stats. 2011, ch. 39, § 53, and Stats. 2011, 1st Ex. Sess., ch. 12, § 35) amended the law, entitling a defendant to four days of conduct credits for every two days of presentence custody. (§ 4019, subds. (b), (c), (f).) The award of credits is not reduced by a defendant's current or prior conviction for a serious felony. The provision contains a savings clause, which states: "The changes to this section enacted by the act that added this subdivision *shall apply prospectively* and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011*. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h), italics added.)

Defendant claims this provision is inherently inconsistent. He admits the phrase "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011" indicates the changes to conduct credits apply only to crimes committed after that date. However, he asserts that the last sentence--Any days earned by a prisoner prior to October 1, 2011, shall be calculated at

12

the rate required by the prior law"--creates an ambiguity because, "if a defendant commits a crime after October 1, 2011, there would be no conceivable purpose for the second sentence since, by definition, all of his or her time in custody will be served after October 1, 2011." He concludes the statute should be interpreted as providing for the "enhanced, four-for-two credit scheme" even where the crime was committed prior to October 1, 2011. Thus, he argues, he is entitled to day for day conduct credits for the time he was in custody after July 20, 2011, for a total of 108 days of presentence custody credit.

As defendant acknowledges, his statutory construction contention was recently rejected in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), in which the Court of Appeal stated: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. (*See People v. Lara* [(2012)] 54 Cal.4th [896,] 906, fn. 9 [(*Lara*)].) The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*Ellis, supra,* 207 Cal.App.4th at p. 1553.)

Defendant urges us to reject the court's reasoning in *Ellis* as faulty because it effectively renders the second sentence of section 4019, subdivision (h), meaningless. We decline to do so, and accordingly reject defendant's claim.

13

## DISPOSITION

The judgment is affirmed.

       HULL       , J.

We concur:

       RAYE       , P. J.

       NICHOLSON       , J.