Filed 10/31/13  P. v. Colvin CA4/2
Opinion following order vacating prior opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055199 |
| v. | (Super.Ct.No. RIF1103603) |
| QUADAIR TYSHAWN COLVIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.

Affirmed with directions.

Sara A. Stockwell, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Teresa

Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant Quadair Tyshawn Colvin appeals following a guilty plea to one felony count of driving under the influence of alcohol with a blood-alcohol level of 0.15 or more, causing great bodily injury, and two related misdemeanor counts and various allegations.  His original guilty plea, to one misdemeanor count of driving under the influence, was set aside on motion of the prosecution after the prosecutor belatedly realized that one victim, Ann G., had suffered a serious injury, specifically a broken arm.

After the motion was granted, the prosecution filed a first amended complaint, charging defendant with, among other charges, three felony counts of driving under the influence while having a blood-alcohol level in excess of 0.15 percent, causing bodily injury to two victims and causing great bodily injury to one victim.  (Veh. Code, §§ 23153, subds. (a), (b), 23578, counts 1-3; Pen. Code, §§ 12022.7, subd. (a), 1192.7, subd. (c)(8), counts 1 & 2.)  Defendant ultimately pleaded guilty to one felony and two misdemeanors.  (Further details of the first amended complaint and the plea are set forth below.)

Defendant now seeks either to have his original misdemeanor plea reinstated or his second guilty plea vacated because the second plea was not knowing, intelligent and voluntary due to ineffective assistance of counsel, and because the trial court was without jurisdiction to enter the second plea because it lacked jurisdiction to vacate the original plea.

We will affirm the judgment in part and remand with directions.

2

PROCEDURAL HISTORY

Defendant was originally charged with two misdemeanor counts of driving under the influence of alcohol, causing bodily injury (Veh. Code, § 23153, subds. (a), (b), counts 1 & 2), driving with a blood-alcohol concentration of 0.15 percent or more (Veh. Code, § 23578, counts 1 & 2) and misdemeanor hit and run (Veh. Code, § 20002, subd. (a), count 3). Defendant pleaded guilty to counts 2 and 3 and admitted a prior conviction for driving under the influence pursuant to a plea agreement which provided for probation. Count 1 was dismissed. Before defendant was sentenced, the district attorney learned that a third victim had suffered a serious injury and moved to vacate the plea in order to charge defendant with felony driving under the influence. The motion was granted, and a first amended complaint was filed.

In the first amended complaint, defendant was charged with felony driving under the influence and driving while having a blood-alcohol level of 0.15 percent or more, causing great bodily injury to Ann G. (Veh. Code, §§ 23153, subds. (a), (b), 23578; Pen. Code, § 12022.7, subd. (a), counts 1 & 2), rendering those counts serious offenses within the meaning of Penal Code section 1192.7, subdivision (c)(8). He was also charged with felony driving under the influence and driving while having a blood-alcohol level of 0.15 percent or more, causing bodily injury to Scott G. and Kailya G. (Veh. Code, §§ 23153, subd. (a), 23578, count 3) and alternatively with misdemeanor driving under the influence and driving while having a blood-alcohol level of 0.15 percent or more, causing bodily injury to Scott G. and Kailya G. (Veh. Code, §§ 23153, subd. (b), 23578, count 4.) Additionally, he was charged with misdemeanor hit and run. (Veh. Code,

3

§ 20002, subd. (a), count 5.)  The first amended complaint also alleged prior convictions for violating Vehicle Code section 23152, subdivisions (a) and (b), and a prior felony prison term, within the meaning of Penal Code section 667.5, subdivision (b).

Defendant pleaded guilty to one felony count of driving under the influence (count 1), to one misdemeanor count of driving under the influence causing bodily injury (count 4), and to one misdemeanor count of hit and run (count 5).  He admitted driving with a blood-alcohol level of 0.15 percent or more, admitted the great bodily injury allegation, and admitted the prior conviction for driving under the influence.  Pursuant to a plea agreement, the sentence for the great bodily injury enhancement was stayed and defendant was sentenced to two years in state prison with concurrent terms of 180 days in county jail for each of the misdemeanors.[1]

Defendant filed a timely amended notice of appeal and obtained a certificate of probable cause.

---

[1] The plea agreement provides that the prosecutor will dismiss any charges and enhancements that defendant did not admit.  Defendant did not admit the Penal Code section 667.5, subdivision (b), prior prison term enhancement as part of the plea agreement.  However, although the prosecutor moved to dismiss the remaining counts, she did not move to dismiss that enhancement, and the court did not dismiss it.  We will remand the matter with directions to the trial court to dismiss the enhancement.

Parenthetically, we note that the sentencing minutes read, "Court orders Prior(s) 2 Stricken."  The reporter's transcript reflects that the court did not dismiss the Penal Code section 667.5, subdivision (b), prior prison term enhancement.  The oral pronouncement of judgment prevails over the clerk's minutes, and if there is any discrepancy between the two, the minutes are presumed to reflect a clerical error. (*People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Mitchell* (2001) 26 Cal.4th 181, 184-185.)

FACTS

According to the probation report, on February 12, 2011, Scott G. was driving in the eastbound carpool lane of Highway 91 near the Serfas Club Drive exit, with Kailya G. and his wife, Ann G. A car hit Scott's car from the right. The impact pushed Scott's car into the concrete median and onto the median wall. His car collided with a metal signpost and landed in the westbound carpool lane. It hit the center median before coming to rest. The other car did not stop.

Officers received a dispatch indicating a parked vehicle with major collision damage to the entire left side, with a person asleep inside. When the officers found the car, they observed that the driver's side window was shattered and both left tires were missing. There were imbedded grooves in the asphalt from the eastbound Highway 91 off-ramp at Serfas Club Drive to where the vehicle was parked. Officers found defendant asleep in the driver's seat with the car keys in his lap. Several small pieces of glass were visible in the left side of defendant's hair. When an officer woke him, he appeared disoriented.

Defendant stated that he was not driving the car at the time of the collision. He said he had lent the car to a friend, Matt, and that a female friend had told him that Matt had crashed the car. He got a ride to the car's location. He said he did not notice the damage to the car but decided to sleep in the car until morning and then call a tow truck.

Officers smelled the odor of alcohol on defendant's breath.  Defendant was uncooperative and failed to perform field sobriety tests as directed.  A breath test device was used and yielded results of 0.197 percent, 0.218 percent and 0.209 percent blood-alcohol content.  Defendant was arrested and booked into custody.

According to the police report, Kailya G. was treated at the scene for a laceration to her finger and Ann G. was transported to a hospital by ambulance due to complaints of pain in her arm, the side of her head and her lower back.  She later reported that she had suffered a broken arm, a concussion, whiplash and vertigo in the accident.

DISCUSSION

1.

WAIVER OF APPEAL RIGHTS

In his opening brief, defendant asserted three grounds for vacating his guilty plea: That the court lacked the authority to grant the prosecution's motion to withdraw from the original plea bargain; that the court erred in denying his *Marsden*[2] motion made after the prosecution's withdrawal from the original plea bargain; and that his attorney provided ineffective assistance during the process leading up to defendant's second guilty plea, rendering his plea not voluntary.  Defendant obtained a certificate of probable cause to address these issues on appeal.

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118.

In his second plea agreement, defendant waived his right to appeal. In her response brief, the Attorney General asserted that defendant's waiver of his appeal rights barred his contention that the trial court improperly denied his *Marsden* motion. We asked the parties to provide supplemental briefing addressing the question whether this waiver operated to bar review of all of the issues raised in defendant's opening brief. Both parties filed supplemental briefs addressing this issue. We will address the effect of the waiver on each of the issues in turn.

*1. Order Setting Aside the Original Plea Agreement.*

A defendant may waive the right to appeal as part of a plea bargain. (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.) A nonspecific waiver such as the one contained in defendant's plea agreement generally applies to all matters which predate the waiver. Because waiver is the relinquishment of a known right, a nonspecific waiver does not bar appeal of future errors which the defendant could not have contemplated when he or she executed the waiver. (*Id.* at pp. 84-86, 85 & fn. 11; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662 [Fourth Dist., Div. Two].)

Here, when defendant executed the second plea agreement, the order setting aside the original plea agreement had, obviously, already occurred, and the validity of that order was therefore within defendant's contemplation when he executed the waiver. Defendant contends that the waiver nevertheless does not preclude review because "the unilateral setting aside of [defendant's] plea agreement goes to the very heart of the legality of the subsequent proceedings." He contends that if the trial court was without authority to set

aside the original plea agreement, the court also lacked jurisdiction to enter the subsequent plea, rendering the second plea agreement and its waiver of appeal void.

We reject that contention because the court was not without jurisdiction either to set aside the original plea agreement or to accept the second plea agreement and to enter defendant's guilty plea. Defendant fails to distinguish between lack of fundamental jurisdiction and an act in excess of a court's jurisdiction. "A lack of jurisdiction in its fundamental or strict sense results in an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.] On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack jurisdiction (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. [Citation.] When a court fails to conduct itself in the manner prescribed, it is said to have acted in excess of jurisdiction." (*People v. Lara* (2010) 48 Cal.4th 216, 224-225, internal quotation marks omitted.) While an act which is beyond the court's fundamental jurisdiction is void *ab initio*, an act in excess of jurisdiction is valid until it is set aside, and "parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time." (*Id.* at p. 225, internal quotation marks omitted.) Here, the court had jurisdiction over the subject matter and over the parties. Accordingly, even if the

8

court acted in excess of its jurisdiction when it set aside the original plea agreement, it did not lack fundamental jurisdiction to do so or to enter defendant's subsequent plea.[3]

Defendant also contends that the issuance of the certificate of probable cause renders the issue cognizable on appeal.[4]  He cites no authority in his supplemental opening brief.  However, in his reply brief, defendant made the same argument in response to the Attorney General's contention that defendant waived the right to appeal the denial of his *Marsden* motion.  There, he cited *People v. Panizzon*, *supra*, 13 Cal.4th 68, arguing that the issue is necessarily appealable because it implicated his constitutional right to counsel and because he obtained a certificate of probable cause.  *Panizzon* does not support the contention that a certificate of probable cause vitiates a valid waiver of appeal in a plea agreement, however.

---

[3] Defendant suggests that we review the setting aside of the original plea agreement even if we find that appeal on that issue was barred by the waiver.  He suggests that as a matter of public policy, we should do so to promote the finality of plea agreements and discourage prosecutors from trying to escape from plea agreements to which defendants would be bound.  However, upholding a waiver entered into voluntarily by a defendant also promotes the policy favoring the finality and enforceability of plea agreements.  (See, generally, *People v. Panizzon*, *supra*, 13 Cal.4th at pp. 79-80.)  Moreover, if defendant had wished to challenge the order setting aside the plea agreement, he could have reserved the right to appeal on that issue.  (See *People v. Castro* (1974) 42 Cal.App.3d 960, 963-965.)  There is no indication in the record that he sought to do so.

[4] Penal Code section 1237.5 provides that an appeal may be taken following a guilty plea only if the defendant has filed with the trial court "a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" and the trial court has executed and filed a certificate of probable cause for the appeal.

9

In *Panizzon*, *supra*, 13 Cal.4th 68, the defendant waived his right to appeal in his plea agreement and did not obtain a certificate of probable cause to assert that the sentence, which was a negotiated term of the plea agreement, was constitutionally disproportionate. The Supreme Court held that the waiver and the absence of a certificate of probable cause each independently barred the appeal. The court did not hold that Panizzon would have been able to maintain the appeal despite the waiver if he had obtained a certificate of probable cause. Rather, after concluding that the appeal was barred by the absence of a certificate of probable cause, the court went on to discuss waiver as an alternative basis for concluding that the appeal was barred. (*Id.* at pp. 79-89.) The court stated its conclusion as follows: "Although defendant maintains he is not contesting the validity of his bargained plea, he seeks to challenge the very sentence he negotiated as part of the plea. . . . [W]e conclude that such a claim is, in substance, an attack on the validity of the plea which is not reviewable on appeal because defendant failed to seek and obtain a certificate of probable cause. [Citation.] Further, *even if it is assumed that defendant's claim does not challenge the validity of the plea, the claim still is not reviewable on appeal because the terms of the plea bargain [i.e., the waiver] preclude any appeal of the negotiated sentence.*" (*Id.* at p. 89, italics added.) Thus, *Panizzon* is consistent with earlier rulings holding that an issue which is not otherwise cognizable on appeal does not become so merely because the court issues a certificate of probable cause. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178-1179; see also *People v. Lovings* (2004) 118 Cal.App.4th 1305, 1310-1311.)

As we discuss below, issues which directly affect the voluntariness of the plea may be cognizable on appeal despite a waiver of appeal in the plea agreement. However, defendant does not contend that setting aside his original plea agreement rendered his subsequent plea, the agreement or the waiver not voluntary. Accordingly, the issue is not cognizable despite the certificate of probable cause.

2. *The Denial of the* Marsden *Motion.*

Defendant contends that despite the waiver, he can challenge the denial of his *Marsden* motion because it implicates his constitutional right to counsel and because he obtained a certificate of probable cause to raise that issue on appeal.

Denial of a *Marsden* motion does not survive a guilty plea, even without a waiver of appeal rights, unless the defendant asserts that counsel's ineffectiveness, as alleged in the *Marsden* motion, "result[ed] in the plea not being intelligently and voluntarily made." (*People v. Lobaugh* (1987) 188 Cal.App.3d 780, 786.) Otherwise, the denial of a *Marsden* motion does not go to the legality of the proceedings. (*Ibid.*) And, if the *Marsden* motion does not go to the legality of the proceedings, issuance of a certificate of probable cause does not confer cognizability. (*People v. Lovings*, *supra*, 118 Cal.App.4th at p. 1311.)

Here, defendant asserts that the failings of his trial attorney which he raised in his *Marsden* motion "influenced" his decision to plead guilty because he was ignorant of the truth of the great bodily injury allegation as a result of his attorney's "complete lack of preparation." However, the denial of the motion did not directly affect the validity of the waiver or of the plea. At the *Marsden* hearing, defendant sought to have his attorney

11

replaced because the attorney had failed to obtain discovery which would establish that Ann G. had suffered great bodily injury in the accident defendant caused. However, the attorney's advice could have directly affected the validity of the subsequent plea only if the attorney continued to provide ineffective assistance *after* the denial of the *Marsden* motion. The record does not reflect that this was the case. After the motion was denied, defendant had further opportunity to discuss with his attorney whether the prosecution could most likely prove the great bodily injury allegation. And, as we discuss below, the record reflects that defendant evaluated his options with knowledge that the prosecution could probably prove the great bodily injury allegation, and that he knowingly and intelligently decided that the plea was to his benefit, despite any misgivings he may have had. Accordingly, any error in the denial of the *Marsden* motion did not survive defendant's subsequent plea and waiver.

3. *The Contention That the Second Plea Was Not Voluntary Because Defendant Received Ineffective Assistance of Counsel Survives the Waiver.*

The parties agree that defendant's ineffective assistance of counsel (IAC) claim is cognizable on appeal, despite the waiver, because defendant contends that his trial attorney's failure to determine whether the prosecution could prove that Ann G. suffered injuries amounting to great bodily injury rendered his plea not knowing, intelligent and voluntary. We agree as well. Although we have not found any California authority directly on point, the decisions holding that the denial of a *Marsden* motion survives a guilty plea if the defendant alleges that the attorney's failings rendered the plea not knowing and voluntary provide a useful analogy, where the IAC claim is likewise

12

asserted to have affected the voluntariness of the plea.  (See *People v. Lobaugh*, *supra*, 188 Cal.App.3d at p. 786; *People v. Lovings*, *supra*, 118 Cal.App.4th at p. 1311.)  And, federal courts which have addressed the question have held that an IAC claim survives a guilty plea with a waiver of appeal rights if the IAC is alleged to have directly affected the plea or the waiver and to have rendered the plea or the waiver itself unknowing or involuntary.  (See discussion in *United States v. White* (5th Cir. 2002) 307 F.3d 336, 339, 341-344, and cases cited therein.)  We agree with the reasoning of these cases, and we conclude that because defendant's IAC claim, if well founded, would render his plea agreement not intelligent and voluntary, the claim cannot be defeated by the waiver.

2.

DEFENDANT'S PLEA WAS VOLUNTARY, KNOWING AND INTELLIGENT

Defendant contends that his plea was not knowing and intelligent because he "never knew the truth" of the great bodily injury allegation and that it was not voluntary because his decision to plead guilty was influenced by his trial attorney's lack of preparation, in that his attorney had not investigated or obtained discovery concerning the great bodily injury allegation.  We disagree.

The voluntariness of a guilty plea is a question of law reviewed de novo. (*Marshall v. Lonberger* (1983) 459 U.S. 422, 431.)  "The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused."  (*Johnson v. Zerbst* (1938) 304 U.S. 458, 464.)  A plea is valid only if the record affirmatively shows that it is voluntary under the totality of the circumstances.

13

(*North Carolina v. Alford* (1971) 400 U.S. 25, 31.)  Here, the record unequivocally shows that defendant considered his options with full knowledge of the relevant facts and made an intelligent choice among the options available to him.

During both the *Marsden* hearing and the change of plea hearing, defendant asked intelligent questions reflecting his understanding of the charges against him, the consequences and the process.  During the *Marsden* hearing, defendant had a lengthy colloquy with the court about the belated addition of the great bodily injury allegation and about whether the allegation would result in limitation of his credits to 15 percent, and he was very articulate as to both concerns.  With respect to the great bodily injury allegation, it was clear that defendant had read the probation report, in which the probation officer reported that Ann G. said that she had suffered a broken arm, a concussion, whiplash and vertigo in the accident.  He was not satisfied that his attorney had not yet obtained medical records supporting the victim's statement; nevertheless, he knew the basis for the great bodily injury allegation, and he considered whether to risk going to trial, where he expected to lose, or accept the offer.  He was told that he did not have to accept the offer and that he could choose to proceed with the preliminary hearing and go to trial.

Defendant also clearly understood the possibility that his sentence would be subject to the 15 percent credit limitation because the great bodily injury allegation purportedly made count 1 a violent felony.  He stated that he would accept the offer if it was "two years with half."  At that point, the judge thought he would get half-time credits, while defendant's attorney believed that because the great bodily injury allegation

14

made his offense a strike, defendant would serve 85 percent of the sentence. The matter was not resolved at the *Marsden* hearing. However, at the change of plea hearing, the court explained to defendant that he would serve 85 percent of the sentence because the great bodily injury allegation made his offense a strike. Defendant stated that he understood. After acknowledging that his attorney had explained his rights, defendant pled guilty to count 1.[5]

The record of these two hearings makes it clear that defendant weighed his options and knowingly and intelligently chose what he deemed to be the best option available to him. He was fully advised of his constitutional rights, the consequences of the guilty plea, and any possible defenses. Accordingly, any failure of his trial attorney to obtain further proof of the victim's injuries did not render defendant's guilty plea invalid. And, even if the trial court was incorrect in stating that defendant would serve 85 percent of his sentence, this does not invalidate the plea. On the contrary, defendant was aware that he would not receive half-time credits but still chose to plead guilty.

---

[5] The basis for the trial court's conclusion that defendant would earn only 15 percent credits is not clear to us. A prisoner sentenced for a violent felony is limited to earning worktime credit at 15 percent of the credits otherwise available. (Pen. Code, § 2933.1.) Defendant was charged with and admitted to the commission of a serious felony (Pen. Code, § 1192.7, subd. (c)(8)), however, not a violent felony. Section 2933.1 does not apply to serious felonies. (*People v. Kimball* (2008) 168 Cal.App.4th 904, 908.) Nor does the fact that the allegation makes the offense a strike, as the trial court said, affect defendant's credits. A person convicted of a new offense with a strike *prior* is limited to 20 percent credits. (Pen. Code, § 667, subd. (c)(5).) But defendant's current conviction will become a strike prior only if he is convicted of a qualifying subsequent offense.

In any event, because defendant does not raise any issue concerning his credits, we will assume that he has already addressed the issue in the trial court. (See Pen. Code, § 1237.1.)

15

## DISPOSITION

The cause is remanded for the limited purpose of dismissing the Penal Code section 667.5, subdivision (b), enhancement allegation in accordance with the plea agreement. The trial court is directed to dismiss the allegation within 30 days after the finality of this opinion and to provide copies of amended sentencing minutes reflecting the dismissal to the parties and to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
Acting P. J.

We concur:


RICHLI
J.


CODRINGTON
J.

16