# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 03-3016, 03-3949, 04-1304, 04-1560

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARVIS H. BOWNES,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 02-CR-30115, 03-CR-30097—**Michael J. Reagan**, *Judge.*

_____

ARGUED FEBRUARY 17, 2005—DECIDED APRIL 26, 2005

_____


Before POSNER, RIPPLE, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* We have consolidated for argument and decision defendant Bownes's appeals from his sentence and from other orders issued by the district court. The primary charge against him was mail fraud arising from a "land flipping" scheme whereby he would acquire homes in a poor area at low prices and resell them to poor people at high prices, financing the sales by obtaining inflated mortgage loans through the submission of false appraisals by crooked appraisers acting in concert with him. He was

also charged with threatening a reporter who investigated the scheme. He pleaded guilty to the charges in accordance with a plea agreement (actually two agreements, but we can ignore that detail) and was sentenced to 210 months in prison and also ordered to pay almost $2.5 million in restitution. His appeals raise a number of issues, including whether he should be resentenced in the light of *United States v. Booker*, 125 S. Ct. 738 (2005). But we cannot reach that or any other issue if, as the government argues, the plea agreement, negotiated by Bownes's lawyer, waived Bownes's right of appeal.

The agreement states that "the Defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which the sentence was determined), including any order of restitution, . . . on any ground whatever, in exchange for the concessions made by the United States in this plea agreement." The exception is inapplicable because the prison sentence was less than the maximum authorized by the statutes under which Bownes was convicted and there is no ceiling on restitution. But he argues that his waiver was not knowing and intelligent because he had no reason to anticipate the ruling in *Booker*. Not only did the agreement predate the Supreme Court's decision; it preceded our decision in *Booker*, which the Supreme Court affirmed.

Disputes over plea agreements are usefully viewed through the lens of contract law. E.g., *United States v. Randle*, 324 F.3d 550, 557-58 (7th Cir. 2003); *United States v. Hare*, 269 F.3d 859, 861-62 (7th Cir. 2001); *United States v. Williams*, 184 F.3d 666, 670-71 (7th Cir. 1999); *United States v. Brunetti*, 376 F.3d 93, 95-96 (2d Cir. 2004) (per curiam); *United States v. Sar-Avi*, 255 F.3d 1163, 1166-67 (9th Cir. 2001). A plea agreement is a type of contract, and the principles of contract law are highly developed, though as we shall note shortly their

application to plea agreements must be tempered by recognition of limits that the Constitution places on the criminal process, limits that have no direct counterparts in the sphere of private contracting.

In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

The government didn't want Bownes to appeal and was willing to offer concessions that he and his lawyer considered adequate to induce him to forgo his right to appeal. Had Bownes insisted on an escape hatch that would have enabled him to appeal if the law changed in his favor after he was sentenced, the government would have been charier in its concessions. Nothing in the text of the plea agreement or in the negotiations leading up to it suggests that the parties agreed to such an escape hatch. Since there is abundant case law that appeal waivers worded as broadly as this one are effective even if the law changes in favor of the defendant after sentencing, *United States v. Bradley*, 400 F.3d 459, 463-66 (6th Cir. 2005); *United States v. Killgo*, 397 F.3d 628, 629 n. 2 (8th Cir. 2005); *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam); *United States v. Teeter*, 257 F.3d 14, 21-23 (1st Cir. 2001); *United States v. Johnson*, 67 F.3d 200, 202-03 (9th Cir. 1995); *United States v. Rutan*, 956 F.2d 827, 829-30 (8th Cir. 1992); overruled in part on other grounds by *United States v. Andis*, 333 F.3d 886, 892 n. 6 (8th Cir. 2003) (en banc), the absence of an explicit escape clause is compelling evidence that no escape is allowed. The government would have been unlikely to agree to an escape

hatch. With more than 12,000 federal criminal appeals every year, hundreds or even thousands will be decided in the interval between the signing of a plea agreement and the exhaustion of the defendant's appellate remedies, and some of those decisions are likely to be interpretable as unforeseen legal changes favorable to the defendant—so the escape hatch might be very large.

Bownes argues that *Booker* is special because it brought about a "sea change" in the law. The identical argument was rejected, rightly in our view, in the *Bradley* and *Killgo* cases that we cited in the preceding paragraph. It is true that *Booker* has had a tremendous impact because it has affected many thousands of sentences, but it is no more, and indeed less, of a "sea change" than numerous other legal innovations scattered across the volumes of the *United States Reports* and the *Federal Reporter*. And anyway a "sea change" exception to the rule that an unqualified appeal waiver is to be enforced as written would be hopelessly vague.

It is also unnecessary given the limitations on waiver of the right of appeal in a criminal case that are imposed by judicial interpretations of the due process clause. *United States v. Schilling*, 142 F.3d 388, 394-95 (7th Cir. 1998); *United States v. Ready*, 82 F.3d 551, 556 (2d Cir. 1996); *United States v. Harvey*, 791 F.2d 294, 300-01 (4th Cir. 1986). As we noted in *United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985), "there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept." Thus a sentence based on constitutionally impermissible criteria, such as race, *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997); *United States v. Johnson*, 347 F.3d 412, 414-15 (2d Cir. 2003); *United States v. Marin*, 961 F.2d 493,

496 (4th Cir. 1992), or a sentence in excess of the statutory maximum sentence for the defendant's crime, *United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997); *United States v. Black*, 201 F.3d 1296, 1301 (10th Cir. 2000), can be challenged on appeal even if the defendant executed a blanket waiver of his appeal rights. See also *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004) (en banc) (per curiam). A particularly striking example of the divergence between the legal principles that govern plea agreements and those that govern ordinary contracts is that while a contracting party is bound by the mistakes of his lawyer, however egregious (his only remedy being a suit for malpractice), the Constitution entitles defendants entering plea agreements to effective assistance of counsel. *United States v. Hodges*, 259 F.3d 655, 659 n. 3 (7th Cir. 2001); *United States v. Jemison*, 237 F.3d 911, 916 n. 8 (7th Cir. 2001); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam).

We need not decide precisely how deep an inroad the cases elucidating such differences make into the contractual model of plea bargaining. None of them bears on the present case. Indeed, it is not even clear that defendants as a whole would benefit from a right to rescind a plea agreement on the basis of a "sea change" in law. Apart from the fact that the government would insist on a compensating concession, and apart from the further fact that rescission would relieve the government from whatever concessions it had made to obtain the agreement, *United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003); *United States v. Whitlow*, 287 F.3d 638, 640-41 (7th Cir. 2002); *United States v. Cimino*, 381 F.3d 124, 127-28 (2d Cir. 2004); *United States v. Ballis*, 28 F.3d 1399, 1409-10 (5th Cir. 1994); see generally *United Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1022 (7th Cir. 2002); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 914 (7th Cir. 2001),

the government would be able to rescind a plea agreement favorable to the defendant if an intervening decision had brought about a "sea change" in favor of the government; what is sauce for the goose is sauce for the gander.

Bownes's appeals are

DISMISSED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*