Filed 5/22/14  P. v. Tarango CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059031 |
| v. | (Super.Ct.No. FSB1102585) |
| MANUEL TARANGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Dismissed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine Gutierrez and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Manuel Tarango has filed a notice of appeal from a judgment convicting him of carjacking (Penal Code section 215, subd. (a))[1] and assault with a firearm. (§ 245, subd. (a)(2).) The conviction came by way of a plea, and defendant also admitted a firearm allegation enhancement with respect to the carjacking charge. He received a total term of 19 years in prison. He now wishes to challenge the denial of two motions for new counsel. (*People v. Marsden* (1970) 2 Cal.3d 118.) Although in our view his contentions might be readily disposed of on the merits, we will enforce defendant's express waiver of the right to appeal, and dismiss the appeal.

## STATEMENT OF FACTS

Following the preliminary hearing, defendant was charged with 11 felonies: forcible rape (§ 261, subd. (a)(2)); carjacking with firearm use (§ 215, subd. (a)); aggravated kidnapping (§ 209, subd. (b)(1)); forcible oral copulation (§ 288a, subd. (c)(2)); assault with a firearm (§ 245, subd. (a)(2)); corporal injury to spouse/cohabitant/child's parent (§ 273.5, subd. (a)); discharging a firearm with gross negligence (§ 246.3, subd. (a)); shooting at an inhabited dwelling (§ 246); shooting from a motor vehicle (former § 12034, subd. (d)); criminal threats (§ 422); and simple kidnapping (§ 207, subd. (a)). Myriad enhancements relating to firearm use and great bodily injury were attached to the charges. One of the charges (aggravated kidnapping) and two enhancements alleged under former section 12022.53, subdivision (d), exposed defendant to life terms—in the case of the enhancements, terms of 25 years to life.

___

[1] All subsequent statutory references are to the Penal Code.

With respect to most of the charges, the victim was Jane Doe, defendant's former girlfriend and the mother of his child. According to the deputy who testified at the preliminary hearing, who had taken her to the hospital to be treated for her injuries,[2] Jane Doe reported that she was sitting in a vehicle waiting for a (male) friend when defendant approached with a handgun. Defendant ordered the victim's (female) companion out of the car, and then ordered the victim to move to the passenger side, pointing the gun at her. Defendant then entered the car and drove off, accusing the victim of cheating on him and repeatedly striking her with the pistol, while also threatening to kill her. The victim told the deputy that after some time defendant parked the car in a secluded area and ordered her to strip. He then forced her to perform oral copulation on him and raped her. Shortly thereafter the vehicle was stopped by police. A nine-millimeter Beretta handgun was found in the car with blood on the barrel.

The first part of the incident was corroborated by Jane Doe's female companion, who spoke with police at the time. This witness also testified that as defendant drove the vehicle past her, she could hear him threatening to kill Jane Doe and also saw him fire shots at a residence.

Defendant told the officers that he had "beat his girl and [] she deserved it." Defendant also described firing his gun into the air and striking the victim with the gun; he also admitted keeping the victim in the vehicle against her will. However, he claimed

---

**2** The victim had a broken nose, a black eye and a concussion, and was covered with dried blood.

the victim had seduced him into sex.  He also indicated that he intended to shoot the victim at some point, but the gun jammed.**³**

Finally, there was testimony to the effect that one of the shots fired by defendant struck a bystander in the leg.

The preliminary hearing was held on December 8, 2011.  On January 9, 2012, defendant made a *Marsden* motion which was heard in camera.  Defendant told the court that he felt that counsel had "already given up" and was "telling me basically do 19 years."  He asserted that the victim had recanted some of the charges (apparently relating to the sex offenses).  He also complained that counsel had not visited him in jail; counsel admitted this and referred to the "holidays."

In response, trial counsel began by reciting his experience, which included about 15 years in practice and 50 to 60 jury  trials with "lots and lots" of felonies.  Trial counsel then gave his version of their interaction, which focused on defendant's reluctance to accept that he faced a very significant amount of prison time.  The trial court denied the motion.

On July 13, defendant again sought new counsel.  He then complained that counsel could only offer him a 12-year deal even though Jane Doe had by then indicated that she had initiated the sexual conduct.  The trial court explained to defendant that such recantations were common and the prosecutor was rarely dissuaded from prosecuting the charges.  Defendant also expressed the inaccurate belief that a substantial portion of the

---

**³** The officer who retrieved the gun confirmed that it was jammed.

case had already been dismissed. Again after hearing from trial counsel—who correctly noted that there was "overwhelming evidence"[4] and stated that defendant unrealistically expected to resolve the case for five years or less—the trial court denied the request.

Two months later, on September 14, 2012, defendant entered a plea of guilty to the charges and enhancement noted at the beginning of this opinion. Trial counsel informed the court that he had advised defendant against the plea but that he had fully advised defendant concerning the rights he would be giving up. Defendant confirmed that he had had ample time to review his rights, the evidence against him, and possible defenses, and that he understood counsel's advice. He also represented that he had not been forced or threatened in any way, that he was not under the influence of drugs or medication, and that he had no questions for the trial court. The trial court accepted the plea, which it found to be voluntary and intelligent.

As part of the written plea form, defendant expressly agreed to waive "any right to appeal from any motion I may have brought . . . and from the conviction and judgment in my case since I am getting the benefit of my plea bargain."

Nevertheless, this appeal followed.

---

[4] Trial counsel told the court that the victim had indeed stated to his investigator that she had initiated the oral copulation, but had done so in order that defendant would not shoot her.

DISCUSSION

The People contend that, where the defendant does not contend that the actual plea was invalid, any *Marsden* error is waived by a guilty plea. (*People v. Lovings* (2004) 118 Cal.App.4th 1305, 1311-1312 (*Lovings*), citing *People v. Lobaugh* (1987) 188 Cal.App.3d 780, 786 (*Lobaugh*).)[5] In *Lovings* the court dismissed any attempt to claim that the plea was the result of the defendant's dissatisfaction with counsel by noting that no animosity was visible at the time of the plea and that counsel opposed the plea, indicating that he believed the chances of a better result at trial were substantial. (*Lovings, supra*, at p. 1309.) Here too, trial counsel not only did not urge defendant to enter the plea, he specifically advised him not to do so. Defendant expressly informed the court that he understood counsel's advice, and counsel, at least, agreed that the plea was voluntary and intelligent, which he surely would not have done if defendant had expressed any disappointment or resentment to him.

However, in his reply brief, defendant cites federal authority to the effect that denial of the right to counsel *of choice* is "structural error" and not implicitly waived by a guilty plea. (See, e.g., *United States v. Smith* (7th Cir. 2010) 618 F.3d 657, 665-667 (*Smith*), citing *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 150-152.)

---

[5] In *Lovings*, the defendant was told by the court that his plea meant that he was "waiving all your appellate rights concerning this voluntary plea." (*Lovings, supra*, 118 Cal.App.4th at p. 1309.) However, the court's reliance upon *Lobaugh*, clearly an "implied waiver/forfeiture" case, indicates that it did not rely on this somewhat express waiver.

We do not agree that these authorities mean that *Lovings* and *Lobaugh* were wrongly decided, as the question of a defendant's right to retained counsel of choice is distinct from that of his far more limited right to seek the removal of competent counsel. However, we need not rely upon the theory of implied waiver, because in this case defendant *expressly* waived his right to appeal.

Even federal courts accept that a defendant may affirmatively waive his right to appeal issues relating to counsel, and in *Smith*, *supra*, 618 F.3d 657, the result depended on the appellate court's finding that the express waiver was not shown to have been adequately informed. (See, e.g., *United States v. Copeland* (4th Cir. 2013) 707 F.3d 522, 528; *United States v. Cook* (2d Cir. 2013) 722 F.3d 477, 482.)

This court has also held that a waiver of appellate rights should be enforced when part of a guilty plea that is voluntarily and intelligently made. (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1658-1660.) As we pointed out, plea agreements benefit the justice system by providing speed, economy, and—in theory—finality of judgments. (*Id.* at p. 1658, citing *United States v. Rutan* (8th Cir. 1992) 956 F.2d 827, 829.) These benefits are largely illusory when the defendant retains the right to challenge his conviction on appeal.

As set out above, defendant executed a change of plea form, which included an express waiver of any right to appeal "any motion I may have brought." We also note that defendant does not directly assert that his plea, when entered, was not

7

constitutionally valid or infected by his previous dissatisfaction with counsel.[6]  He only argues that the denial of his *Marsden* motion was error.

It is true that *if* defendant had directly raised the involuntariness of his plea as an issue, he might present an appealable issue because it would be a challenge to the "legality of the proceedings" as described in section 1237.5, subdivision (a).  (See *Lobaugh*, *supra*, 188 Cal.App.3d 780, 786; (dis. opn. of Callahan, J.) *People v. Robinson* (1997) 56 Cal.App.4th 363, 376 at fn. 1.)  But that is not how the appeal is written, and indeed the record in no way supports the conclusion that by the time of the plea, defendant was acting out of desperation.  We also note that unlike *Smith*, *supra*, 618 F.3d 657, no question is raised as to the adequacy or voluntariness of the written waiver.  The case is therefore presented to us as one in which defendant voluntarily executed a full waiver of his appellate rights and nevertheless seeks to appeal the denial of a "motion" clearly covered by the waiver.

We will accordingly enforce the waiver on its terms.[7]

---

[6]  In his request for a certificate of probable cause—which the trial court executed—defendant claimed that he felt "compelled" to plead guilty because he believed that trial counsel would not adequately protect his interests.  However, this request was not filed until some nine months after the plea, and was prepared by appellate counsel.  It does nothing to establish defendant's state of mind at the time of the plea.

It is well-established that the fact that a court executes a certificate of probable cause for a nonappealable issue does not make the issue cognizable on appeal.  (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178.)

[7]  Having so concluded, in the interests of foreclosing further proceedings, we will briefly (and reluctantly) address the merits.  It is perfectly apparent that defendant's dissatisfaction with counsel was based on misapprehensions of fact (with respect to the supposed dismissal of charges), a misunderstanding (with respect to the legal and

*[footnote continued on next page]*

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>
Acting P. J.

We concur:

<u>KING</u>
J.

<u>MILLER</u>
J.

---

*[footnote continued from previous page]*
practical effect of any recantation by the victim), and an inability to face the fact that he was legitimately exposed to *multiple* life terms plus a massive determinate term. A trial court only abuses its discretion in denying a *Marsden* motion if it is apparent that the denial will interfere with the defendant's right to effective assistance. (*People v. Abilez* (2007) 41 Cal.4th 472, 488.) We do not at all agree with defendant's assertion that it may be "readily inferred" that the attorney-client relationship had irretrievably broken down. Defendant's reasons for desiring new counsel said nothing about counsel's competence. His lack of trust alone did not require new counsel (*People v. Abilez*, *supra* at p. 489), and there was no showing at all that defendant either could not or would not cooperate with counsel. (Cf. *United States v. Moore* (9th Cir. 1998) 159 F.3d 1154, 1159-1160 [a case cited by defendant involving a relationship replete with accusations, threats, and strained communication].) There was clearly no abuse of discretion.