In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 24-2355 & 24-2401

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENIN EDWARDS,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court for the
Central District of Illinois.
No. 21-CR-10012-JES-JEH — **James E. Shadid**, *Judge.*

———————————

ARGUED MAY 15, 2025 — DECIDED JULY 31, 2025

———————————

Before RIPPLE, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Kenin Edwards was sentenced to 21 months' imprisonment for tax fraud. The procedural road leading to his sentence was rocky, to say the least. Edwards would come to be represented by four attorneys between his indictment and sentencing. Along the way, he repeatedly delayed his trial before eventually reaching an agreement to plead guilty. After his guilty plea, things still did not proceed smoothly, however, as Edwards fired his final attorney on the

eve of sentencing, decided to proceed pro se, recanted his admission of guilt, sought to vacate his plea, challenged stipulations made in his plea agreement, and flooded the court with frivolous motions. Though the government had agreed to recommend a split sentence of five months in exchange for Edwards's guilty plea, it sought 21 months at sentencing given everything that had transpired since.

Edwards now wants to take it all back. He asks to be resentenced with the benefit of his plea agreement and its sentencing recommendation of five months. To justify this, he claims that his Sixth Amendment rights were violated when the district court disqualified one of his attorneys for a conflict of interest and when it, in his view, forced Edwards to proceed pro se at sentencing. He also says that the government, not he, breached the plea agreement by recommending a higher sentence. The merits of these arguments are highly questionable. But we dismiss his appeal without reaching them because Edwards waived his right to appeal in his plea agreement.

I

Kenin Edwards was a contractor for logging businesses, working as a middleman between landowners and third-party timber purchasers. He helped negotiate contracts between these parties and earned a commission for each successful deal he brokered. As one normally does, Edwards filed state and federal tax returns each year for this venture. The issue is that Edwards underreported his income to the tune of nearly $2.8 million over four years, causing a tax loss of over $200,000. As a result of this scheme, Edwards was indicted on 14 counts of wire, mail, and tax fraud. 18 U.S.C. §§ 1341 & 1343; 26 U.S.C. § 7206(1).

Edwards initially retained two attorneys to mount his defense: Robert Hanauer and Anthony Cameron. Two years and a series of unremarkable continuances later, a timeline for Edwards's trial had finally solidified. Just two weeks before trial was to start, though, things took a turn when Hanauer and Cameron filed a motion to withdraw as counsel because Edwards had discharged them. At a hearing on the motion, Edwards explained that certain exculpatory materials seized during the search of his home were never returned to him or properly documented by the government. Hanauer and Cameron, however, stated they had no reason to dispute the government's contrary assertions and declined to file a motion accusing the government of discovery violations. The government argued that this was a blatant attempt by Edwards to delay trial. But finding a genuine breakdown in trial strategy between Edwards and his attorneys, the district court indicated it would permit Hanauer and Cameron to withdraw if Edwards retained new counsel within 21 days. The court set a status conference for two days after this 21-day deadline.

Attorney William Anderson entered an appearance for Edwards on day 20. This was not a surprise; the parties had discussed the possibility of Anderson taking over as counsel at the most recent hearing. The morning of the scheduled status conference, the government filed a motion to disqualify Anderson. The court granted Hanauer and Cameron's renewed motion to withdraw and set a hearing on Anderson's disqualification. Anderson had previously represented a key government witness—a fact which Edwards was well aware of, since he had arranged that representation. What's more, Edwards had listed Anderson as a potential witness in his upcoming criminal trial. Finding a clear conflict that outweighed

Edwards's interest in retaining Anderson, the court granted the motion and disqualified Anderson.

Edwards promptly retained his fourth and final attorney, Peter Lynch. His trial was continued twice more before the parties finally entered into a plea agreement. Pursuant to the agreement, Edwards pleaded guilty to one count of filing a false and fraudulent tax return in violation of 26 U.S.C. § 7206(1). He also acknowledged that he had underreported his taxes for four years and stipulated to the total tax loss amount. Based on these admissions, the government recommended a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

Reflecting these terms, the parties anticipated that Edwards's advisory Guidelines range would be 10 to 16 months. Accordingly, the government "agree[d] to recommend no higher than a split sentence of 5 months of imprisonment and 5 months of home confinement" and a "fine of no more than $10,000." If Edwards was not eligible for the reduction for zero criminal history points, as expected, the government "agree[d] to recommend no higher than a split sentence at the low end of" his ultimate Guidelines range. Separately, the plea agreement allowed the government to "chang[e] its position" on whether to recommend a reduction for acceptance of responsibility "if new evidence to the contrary [was] discovered or if [Edwards] later demonstrate[d] a lack of acceptance of personal responsibility."

In exchange for these recommendations, Edwards "waive[d] all rights to appeal and/or collaterally attack his conviction and sentence." The waiver "[did] not apply to a claim that [Edwards] received ineffective assistance of counsel." During his change of plea hearing, Edwards swore to the

statements in the plea agreement, acknowledged that he understood he was waiving his appeal rights, and said he was satisfied with Lynch's representation.

The probation office filed a revised presentence report one week before sentencing. That same day, Lynch moved to withdraw as Edwards's counsel due to an increasingly deteriorating attorney-client relationship. He asked the court to continue sentencing so Edwards could prepare objections to the revised presentence report; as the probation office noted, Lynch had not submitted any objections to its initial report. According to Lynch, Edwards had discharged him and intended to file pro se motions and represent himself. The government objected to both motions unless Edwards proceeded pro se and submitted to a hearing under *Faretta v. California*, 422 U.S. 806 (1975), to ensure his waiver of his Sixth Amendment right to counsel was knowing and intelligent. The court set a hearing on the motion to withdraw just before sentencing was scheduled to take place so that, depending on the court's decision, sentencing could proceed as planned.

Edwards submitted a pro se motion the day before these hearings. In it, he renewed his allegations of discovery violations by the government that hindered his defense, asserted his innocence, and sought to withdraw his guilty plea. He also included objections to the presentence report that Lynch had neglected to submit. At the hearing on the motion to withdraw, Edwards confirmed that he wanted to discharge Lynch. The court conducted a *Faretta* colloquy to further verify Edwards's desire for self-representation and walk him through the requirements and risks. Satisfied with Edwards's responses, the court granted his request to proceed pro se, set a schedule on the motion to withdraw his guilty plea, and

stayed the sentencing hearing. It informed Edwards that he would likely be proceeding pro se at sentencing if he was unable to withdraw his plea. But the court emphasized that it would reconsider its position if Edwards obtained another attorney to represent him at sentencing without seeking a continuance.

Left to his own devices, Edwards inundated the court with filings. He repeatedly asserted his innocence, contradicted his admissions of guilt and stipulations in his plea agreement, and complained of the same purported discovery violations by the government as well as Lynch's handling of them. He filed about a dozen additional motions or petitions with a variety of frivolous requests—one even sought to disqualify the district judge for his apparent bias against Edwards. As a result of this behavior, the government determined that Edwards was no longer entitled to a reduction based on acceptance of responsibility. Edwards characterized this as an anticipatory breach of the plea agreement.

The district court denied Edwards's motion to withdraw his guilty plea and, rejecting his anticipatory breach argument, found his actions an obvious breach of the plea agreement instead. After several additional continuances and one more motion to withdraw his guilty plea, the case finally proceeded to sentencing. Without the reduction for acceptance of responsibility, Edwards's Guidelines range was 15 to 21 months' imprisonment. Throughout sentencing, Edwards repeated the same refrain of objections and claims of innocence. Given Edwards's repeated obstructive conduct, the government recommended a sentence of 21 months and a fine of $25,000. The court sentenced him to 21 months, with a $10,000

fine. Edwards filed several meritless post-judgment motions before initiating this appeal.

## II

Edwards no longer wishes to vacate his plea, despite his repeated and vehement insistence to the contrary in the district court. Rather, he asks us to vacate the district court's judgment and remand for resentencing according to the plea agreement's terms. He supplies three justifications for this request. The first two stem from purported violations of his Sixth Amendment rights, once when the district court disqualified Anderson and again when it allegedly forced him to proceed pro se at sentencing. In his third argument, Edwards says the government breached its obligations under the plea agreement by failing to recommend a split sentence of five months as contemplated by its terms. According to Edwards, remand is warranted if we agree with him on any one of these issues.

The problem is that Edwards bargained away his appeal rights in his plea agreement. Not to worry, he says, because each of his claims is excepted from his appeal waiver. We disagree and find Edwards bound by the waiver he agreed to.

"Appeal waivers in plea agreements are typically enforceable." *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014). That said, "no appeal waiver serves as an absolute bar to all appellate claims." *Garza v. Idaho*, 586 U.S. 232, 238 (2019). Rather, given the contractual nature of plea agreements, an appeal waiver only bars review of claims that fall within its scope. *Id.* ("That an appeal waiver does not bar claims outside its scope follows from the fact that, although the analogy may not hold in all respects, plea bargains are essentially

contracts.") (cleaned up). Additionally, certain claims are excepted from appeal waivers. "Most fundamentally," defendants may bring an appeal challenging "whether the waiver itself is valid and enforceable—for example, on the grounds that it was unknowing or involuntary." *Id.* at 239.

In addition to these contractual limits, there are other checks on the waiver of appeal "imposed by judicial interpretations of the due process clause." *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005). While traditional principles of contract law apply to plea agreements, their application must be "tempered by recognition of limits that the Constitution places on the criminal process." *Id.* at 636; see also *Adkins*, 743 F.3d at 192 ("Although we construe plea agreements as contracts, we regard plea agreements as unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain.") (quotations omitted). In respect of these limits, our cases have carved out several paradigmatic exceptions to appeal waivers. These permit challenges to an illegal sentence (i.e., one based on constitutionally impermissible criteria or in excess of statutory maximums), a judicial process devoid of "some minimum of civilized procedure," and ineffective assistance of counsel in negotiating the plea agreement. *Bownes*, 405 F.3d at 637 (quotation omitted).

A

Edwards contends that his Sixth Amendment claims are the type of challenge that always falls outside the scope of an appeal waiver. We disagree.

1

We turn first to Edwards's claim that the district court violated his Sixth Amendment right to choose his counsel when it disqualified Anderson for an apparent conflict. To argue that this claim overcomes his appeal waiver, Edwards points to our recent decision in *Elliott v. United States*, 110 F.4th 974 (7th Cir. 2024), where we extended the ineffective assistance exception to include a defendant's claim that the district court violated his right to conflict-free counsel. *Id.* at 980–82. Edwards asks us to expand the exception once again to include his choice of counsel claim because it also implicates his right to effective representation under the Sixth Amendment. This request misunderstands the principles undergirding the ineffective assistance exception.

No doubt, a Sixth Amendment claim of ineffective assistance of counsel is one of the foremost exceptions to appeal waivers. *Hurlow v. United States*, 726 F.3d 958, 964–66 (7th Cir. 2013). But defendants cannot regain their appeal rights with a run-of-the-mill claim of ineffective assistance. Rather, this exception is limited to claims that counsel was ineffective during the negotiations of the plea agreement itself. See *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). The exception comes from a recognition of the due process concerns with barring claims that stem from "the very product of the alleged ineffectiveness." *Id.*

The ineffective assistance exception is a "particularly striking example of the divergence between the legal principles that govern plea agreements and those that govern ordinary contracts." *Bownes*, 405 F.3d at 637. While we ordinarily bind contracting parties to their lawyers' mistakes, defendants entering plea agreements are entitled to effective assistance of

counsel under the Sixth Amendment. *Id.* And, critically, a waiver "cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." *Hurlow*, 726 F.3d at 967–68. To put it plainly, defendants can bring these claims because plea agreements (and their appeal waivers) are invalid and must be set aside if they are the result of ineffective assistance.

In *Elliott*, we recognized that the Sixth Amendment's guarantee of effective assistance includes the right to conflict-free counsel, such that Elliot's claim "necessarily implicate[d] his … right to effective assistance of counsel." 110 F.4th at 981. Elliott argued on appeal that the district court concealed information about his counsel's serious conflict of interest, depriving him of the opportunity to make an informed decision to waive the conflict. *Id.* at 976. Because he was represented by this conflicted counsel when he pleaded guilty and waived his appeal rights, Elliott's claim called into question the knowing and voluntary nature of his appeal waiver, allowing us to find it covered by the ineffective assistance exception. *Id.* at 981–82 & n.13.

Edwards's argument that we should further expand the exception to include his choice of counsel claim is, on its face, a reasonable request. A defendant's choice of counsel can "seriously impact" his decision to plead guilty and affect its voluntary and intelligent nature. *United States v. Smith*, 618 F.3d 657, 663 (7th Cir. 2010) (quotation omitted). The issue for Edwards is that his choice of counsel claim does not attack the voluntary and intelligent character of his plea or otherwise challenge the validity of his plea agreement. Quite the opposite: Edwards specifically requests that we leave his guilty plea intact and remand for resentencing according to the agreement's terms.

Edwards correctly notes that, if meritorious, his choice of counsel claim implicates a structural error where prejudice is presumed. See *United States v. Gonzales-Lopez*, 548 U.S. 140, 150 (2006). But this does not permit our review. The presumption of prejudice to a defendant does not bear on his ability to waive a claim. On the contrary, defendants can—and do— waive structural errors all the time. *Jackson v. Bartow*, 930 F.3d 930, 934 (7th Cir. 2019). To avail himself of the ineffective assistance exception, a defendant must allege that the purported Sixth Amendment violation made his plea unknowing or involuntary such that it "render[s] the plea agreement (and the waiver contained therein) invalid." *Elliott*, 110 F.4th at 982 n.13. Indeed, "[t]he sole type of ineffectiveness claim we have said that a defendant may not waive is an ineffectiveness claim having to do with the waiver (or the plea agreement as a whole) and its negotiation." *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014). Edwards makes no such contention, so his appeal waiver bars this claim.

2

We can dismiss Edwards's claim that the district court forced him to proceed pro se at sentencing for much the same reason. Of course, at its core the Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI; *Garza*, 586 U.S. at 237. And it is well-established that this right extends to sentencing. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). But we have repeatedly enforced appeal waivers and "dismissed appeals contending that the defendant was deprived of the effective assistance of sentencing counsel." *Smith*, 759 F.3d at 707. This is because, as discussed, the ineffective assistance claim must relate directly to the waiver or its negotiation to benefit from the exception. A claim that

counsel performed deficiently at sentencing does not impact the validity of a prior waiver of appeal rights. The same logic forecloses Edwards's claim that he was deprived of counsel at sentencing.

Briefly, we note that we would be facing a different question if Edwards's claim involved the total deprivation of counsel without a *Faretta* colloquy. Such a Sixth Amendment violation would necessitate a different calculus of the due process interests to determine whether they justified a waiver exception. But that is not the situation presented here. The court conducted a thorough *Faretta* colloquy to assess Edwards's repeated, insistent requests to discharge his counsel and represent himself at sentencing. Edwards's claim simply does not rise to the level of "matters that implicate the fundamental fairness of the proceeding," *Smith*, 759 F.3d at 707, nor does it fall within one of the other recognized and limited exceptions to appeal waivers. This claim is waived.

## B

Finally, Edwards argues that the government breached the plea agreement with its sentencing recommendation. Whether breach claims survive an appeal waiver is a difficult question, made more complicated by an array of inconsistent case law. Broadly speaking, our cases approach the issue in one of two ways.

To start, we have routinely entertained a defendant's breach claim despite his appeal waiver. Most often, we have employed what can best be described as a two-step process, first determining whether the government actually breached the plea agreement and, if it did not, then enforcing the waiver and dismissing the appeal. E.g., *United States v.*

*Malone*, 815 F.3d 367, 370 (7th Cir. 2016); *United States v. Match-opatow*, 259 F.3d 847, 852–53 (7th Cir. 2001); *United States v. Linder*, 530 F.3d 556, 564–65 (7th Cir. 2008).[*] Our rationale in these cases has generally sounded in contract law—because one party may void a contract if the other party materially breaches, we've reasoned, an "otherwise-valid appellate waiver does not preclude our review of [a] claim of material breach." *Malone*, 815 F.3d at 370; see also *United States v. Craig*, 142 F.4th 192, 198–99 (4th Cir. 2025) (if government breaches plea agreement, defendant may seek specific performance on appeal despite appeal waiver because he "was deprived of the benefit of his bargain" and remand "makes him whole"); *Gonzalez*, 16 F.3d at 989–90 (government's breach releases defendant from his reciprocal promise not to appeal).

Simultaneously, another line of cases holds that appeal waivers foreclose these claims altogether. In *United States v. Whitlow*, 287 F.3d 638 (7th Cir. 2002), we held that a defendant cannot appeal the issue of breach if the district court has already decided that no breach occurred, as it would be untenable to assume "that a *claim* of breach allows appeal." *Id.* at 640. Rather, the waiver of appeal "determines *who* will be the

---

[*] Ten of our sister circuits have concluded that appeal waivers are unenforceable when the government breaches the plea agreement. *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010); *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008); *United States v. Tate*, 845 F.3d 571, 574 (4th Cir. 2017); *United States v. Keresztury*, 293 F.3d 750, 756 (5th Cir. 2002); *United States v. Keller*, 665 F.3d 711, 718–19 (6th Cir. 2011) (breach must be material); *United States v. Sayles*, 754 F.3d 564, 568 (8th Cir. 2014); *United States v. Gonzalez*, 16 F.3d 985, 989–90 (9th Cir. 1993); *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008); *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016); *United States v. Thomas*, 999 F.3d 723, 728–29 (D.C. Cir. 2021) (analyzing breach despite waiver).

judge of a claim that breach has occurred." *Id.* We relied in part on a decision from one year earlier, *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001), in which we said that an appeal waiver "means that the final decision will be made by one Article III judge rather than three Article III judges." *Id.* at 861. In short, *Whitlow* and *Hare* establish that a defendant's appeal waiver precludes a court of appeals from considering his claim of breach. *United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) ("Stated otherwise, a mere '*claim* of breach' does not void a waiver because that would make all appellate waivers unenforceable as 'talk is cheap.'") (quoting *Whitlow*, 287 F.3d at 640).

For some time, we have recognized this "apparent tension" in our approach to consideration of breach claims despite appeal waivers, *United States v. Haslam*, 833 F.3d 840, 845 (7th Cir. 2016), but have yet to reconcile it. Nor do we today—as discussed below, Edwards's claim would be barred by his appeal waiver under either of the predominant standards. Resolving this tension would not alter today's outcome.

In this case, it is plain that the government did not commit a breach. According to Edwards, the government breached the plea agreement when it recommended a 21-month prison sentence and a fine of $25,000. He says the agreement unconditionally obligated the government to recommend no more than a split sentence of five months and a $10,000 fine. The lone exception to this condition, Edwards argues, was if he didn't receive a zero-point offender reduction; in that case, the government was to recommend a split sentence at the low end of the ultimate Guidelines range.

To evaluate a claim of breach, we look to the "plain language of the plea agreement." *United States v. Quintero*, 618

F.3d 746, 751 (7th Cir. 2010). "[W]e interpret a plea agreement based on the parties' reasonable expectations and construe ambiguities against the government as the drafter." *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). If the agreement is unambiguous, we hold the parties to its literal terms. *United States v. Hallahan*, 756 F.3d 962, 974 (7th Cir. 2014). Importantly, we must "eschew" any interpretation of the agreement's provisions "that make[s] them unreasonable." *Id.* We will not presume the contract "to have imposed an absurd" condition on one of the parties. *Id.* (quotation omitted).

The interpretation Edwards advocates for lends itself toward absurdity. Read in isolation, the provision of the plea agreement outlining the government's planned sentencing recommendation could theoretically be thought to bind the government as Edwards contends. But, as with other contracts, we must look to the "structure of the plea agreement" to illuminate the proper meaning of its terms. *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978). In another provision, the government was given carte blanche to recant its recommendation for a reduction based on Edwards's acceptance of responsibility under U.S.S.G. § 3E1.1. To hold the government to a sentencing recommendation based on Edwards's anticipated Guidelines range, regardless of any subsequent conduct costing him the acceptance of responsibility reduction, would render that provision meaningless. *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998) ("A plea agreement, like any contract, should be construed as a whole, so that various provisions of the contract are harmonized and none are rendered meaningless.") (quotations omitted). Losing the two-level reduction under § 3E1.1 would—and did—automatically increase Edwards's Guidelines range. The government adjusted its sentencing recommendation accordingly.

On any reasonable interpretation of the agreement, this was not a breach.

Under either *Whitlow* or the two-step process, then, Edwards would be unable to obtain appellate review of his breach claim. As with his other claims, dismissal is required.

DISMISSED